IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| WILBERT ROMON BANKS, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | 2:14-CV-251 |
| § | |
| LORIE DAVIS, Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| § | |
| Respondent. § | |

**REPORT AND RECOMMENDATION**
**TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner WILBERT ROMON BANKS has filed with this Court a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 181st Judicial District Court of Randall County, Texas, for the felony offense of capital murder and the resultant life sentence. For the reasons set forth below, the United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DENIED.

I.
FACTUAL AND PROCEDURAL HISTORY

On August 26, 2009, petitioner was charged by indictment in Cause No. 20,617-B with the offense of capital murder, enhanced with a previous felony conviction. [Dkt. 13-5 at 16-17]. The indictment alleged petitioner intentionally and knowingly causing the death of two individuals on or about April 18, 2009 while using and exhibiting a firearm, and the indictment contained an

enhancement paragraph related to petitioner's February 2004 conviction for the felony offense of assault causing bodily injury on a family member. [*Id.*]. Petitioner entered a plea of guilty to the offense in exchange for the State's recommendation that he be sentenced to life imprisonment without the possibility of parole and that the enhancement paragraph be waived. *See State v. Banks*, No. 20,617-B. [Dkt. 13-6 at 127- 130]. Also contained in the Felony Plea Memorandum of record are petitioner's agreements to waive the following: an appeal, a jury trial, the confrontation of witnesses and stipulation of evidence, prosecution by indictment, ten days preparation time (in which he also confirmed his satisfaction with his counsel's representation), and two days service of indictment. [*Id.* at 127-128]. On October 26, 2011 the trial court accepted petitioner's plea and sentenced him to the recommended sentence of life without the possibility of parole. [Dkt. 13-6 at 136-137].

Although petitioner BANKS waived his right to appeal pursuant to his plea bargain agreement, he pursued an appeal *pro se* and on February 22, 2012, the state intermediate appellate court dismissed petitioner's direct appeal. *Banks v. State*, 07-11-00512-CR, 2012WL569607 at *1 (Tex. App.—Amarillo Feb. 22, 2012, no pet.). [Dkt. 13-1]. Petitioner did not file a petition for discretionary review with the Texas Court of Criminal Appeals. [Dkt. 17-1 at 2].

Petitioner sought collateral review of his Randall County conviction by filing a state habeas corpus petition. On August 27, 2014, the Texas Court of Criminal Appeals denied petitioner's state habeas application without written order on the findings of the trial court without hearing. *Ex parte Banks*, No. 81,900-01. [Dkt. 13-7].

On December 12, 2014, the instant federal habeas petition, unsigned and undated by petitioner, was received and filed by the District Clerk. [Dkt. 3]. On April 1, 2015, the State filed its

answer opposing federal habeas corpus relief.[1]

## II.
## PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States in that he received ineffective assistance of trial counsel because:

1. Counsel told him he would have 30 days to withdraw his guilty plea;

2. Counsel coerced him into waiving a jury trial by informing petitioner he would be biased as a black man sitting with a predominantly white jury; and

3. Counsel failed to challenge the racial make-up of the grand and petit juries.

## III.
## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall <u>not</u> be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*,

---

[1] On April 20, 2015 petitioner filed a motion requesting leave to amend his habeas petition. [Dkt. 18]. After respondent filed her opposition on May 6, 2016, the Court denied the motion to amend because the claims were time barred. [Dkts. 22, 25].

210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003). A determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). The applicant has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997).

Here, petitioner filed a state habeas application challenging the constitutionality of his conviction and sentence alleging two of the same grounds alleged in the instant federal habeas petition.[2] The Court of Criminal Appeals denied petitioner's state habeas application on August 27, 2014 without written order on the findings of the trial court without hearing. *Ex parte Banks*, No. 81,900-01. [Dkt. 13-7]. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as in this case, it is an adjudication on the merits, and is entitled to the presumption of correctness. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999). Consequently, this Court's review is limited to a determination of whether petitioner has shown the state court's decision that petitioner was not denied effective assistance of trial counsel was based on an unreasonable determination of the facts in light of the evidence before the state court, or was contrary to, or involved an unreasonable

---

[2]The Court will address petitioner's failure to raise his second federal habeas claim in his state habeas application below.

application of, clearly established federal law, as determined by the United States Supreme Court.

## IV.
## EXHAUSTION AND PROCEDURAL BAR

By his second claim petitioner claims counsel coerced him into waiving a jury trial by informing petitioner he would be biased as a black man sitting with a predominantly white jury. Respondent argues this claim is unexhausted and should be denied. Respondent has fully and accurately set out the appropriate doctrines, requirements, and case law regarding exhaustion and procedural bar. [Dkt. 17 at 13-14]. These standards and supporting authority are applicable to this case and are hereby incorporated.

Petitioner did not present the second claim he now presents in this federal habeas corpus proceeding to the Texas Court of Criminal Appeals, the highest court in Texas to which a prisoner may challenge his conviction, by way of a petition for discretionary review on direct appeal, or by a collateral state habeas corpus application after direct appeal was concluded. Petitioner has not demonstrated there was an absence of available State corrective process or that circumstances existed that rendered such corrective process ineffective to protect his rights. Since there was an available procedure, under the laws of Texas, to raise the challenges petitioner now presents federally, the state's highest court has not had an opportunity to review and determine the merits of petitioner's claims. Therefore, petitioner has not exhausted the remedies available in the courts of the State with respect to his second claim. Petitioner did not avail himself of the procedure available to him and his unexhausted claim is now procedurally barred and should be denied.

## V.
## MERITS

### A. Ineffective Assistance of Trial Counsel

#### 1. Waiver of Claims by Guilty Plea

In all three of his claims petitioner contends he received ineffective assistance of trial counsel. A guilty plea waives any violation of constitutional rights that occurred prior to the plea, except for claims of ineffective assistance of counsel regarding the voluntariness of the guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). The Supreme Court has stated:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards...
>
> ...
>
> A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement, such as unconstitutional grand jury selection procedures, might be factually supported.

*Tollett v. Henderson*, 411 U.S. 258, 267-268, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

As explained below, petitioner's plea was knowing and voluntary. Therefore, petitioner's third claim concerning the failure of counsel to challenge the racial make-up of the grand and petit juries, was waived by the guilty plea. That claim does not involve a challenge to the voluntariness of the guilty plea and should be denied. *See United States v. Hanyard*, 762 F.2d 1226, 1229-30 (5th Cir. 1985) (guilty plea waived claim of sufficiency of evidence).

#### 2. Standard of review

The proper standard for reviewing a claim of ineffective assistance of counsel is enunciated in

*Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In her answer, respondent thoroughly and accurately briefed statutory and case law regarding the applicable standard of review, as well as the application of presumptions and burdens of proof, for claims of ineffective assistance of counsel. *Respondent's Answer,* Dkt. 17 at 15-17. The Court will not repeat respondent's recitation regarding the standard of review this Court must follow in determining petitioner's claim under the two-pronged *Strickland* standard and the Court acknowledges petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687. If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Id.* at 697. Moreover, when a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and that presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow,* ___ U.S. ___, 134 S.Ct. 10, 13, 187 L. Ed. 2d 348 (2013). Finally, in order "[t]o prove prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Bond v. Dretke,* 384 F.3d 166, 167-68 (5th Cir.2004) (citing *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)) (internal quotation marks omitted).

### 3. Withdrawal of Guilty Plea in 30 Days

By his first ground, petitioner contends trial counsel, Mr. Maxwell Peck, told him he would have 30 days to withdraw his guilty plea once it was entered. A federal court will set aside a guilty-plea conviction only if the petitioner can allege and prove that his plea was not a voluntary,

knowing, and an intelligent act. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed. 2d 747 (1970). To be constitutionally valid, a guilty plea must be intelligent and voluntary. *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). A plea is voluntary if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *United States v. Washington*, 480 F.3d 309, 315 (5th Cir. 2007). To be voluntary, a guilty plea must not be produced by actual or threatened physical harm or by mental coercion overbearing the will of the defendant or by state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000). For a guilty plea to be intelligently entered, the defendant must be competent, have notice of the nature of the charge against him, and understand the consequences of a guilty plea, including the nature of the constitutional protection he is waiving. *Id.* at 364-65. To understand the consequences of a guilty plea, the defendant must know the maximum prison term and fine for the offense charged. *Santos-Sanchez v. United States*, 548 F.3d 327, 336 (5th Cir. 2008). A defendant's statements in court and in plea documents that his plea was knowing and voluntary and that he understood the rights he was waiving create a presumption that in fact the plea is valid. *United States v. Washington*, 480 F.3d at 316.

Petitioner was admonished in writing that his punishment would be life in prison without the possibility of parole instead of the death penalty. [Dkt. 13-6 at 127]. Petitioner judicially confessed he committed the offense of capital murder [*Id.* at 129]; stated he understood the consequences of his plea; and stated his plea was freely, knowingly, and voluntarily entered and that no one promised him anything, including community supervision (probation), in order to cause him to plead guilty. [*Id.* at 129-130].

Petitioner's does not deny he freely, knowingly, and voluntarily entered his plea of guilty,

but contends he would not have entered his guilty plea but for the statement by counsel that he could withdraw his plea within 30 days of its entry. Petitioner's allegation about counsel's advice, however, is directly refuted by the record. The Felony Plea Memorandum, which petitioner signed in multiple places, specifically stated,

> Plea agreement. A plea agreement exists as indicated below:
>
> *Life* in prison (TDCJ-ID); credit for time served in this case. *(without the possibility of parole)*[3]
> ...
> Waiver of Appeal - As part of this plea bargain agreement, the Defendant agrees to waive his or her right to appeal (including a waiver of the right to appeal the issue of whether the defendant's plea was voluntarily and understandingly made) after sentence or punishment has been imposed in accordance with the plea bargain agreement.
> ...
> Defendant's Statement on Admonishments. Comes now the defendant, joined by my counsel, and state that I understand the foregoing admonishments from the Court and am aware of the consequences of my plea. I am now mentally competent to stand trial and I was sane at the time of the commission of the offense to which I have plead. No one has threatened me in any way or placed me under any kind of fear in order to cause me to enter a plea to the charge herein and my plea if freely, knowingly, and voluntarily entered. No one has promised me anything, including probation, a pardon, or early parole in order to cause me to enter a plea to the charge herein.

[Dkt. 13-6 at 127, 130]. Petitioner's written and signed plea memorandum affirmatively stated there were no promises made. This language referred to and made clear there were no promises by anyone, including trial counsel. Petitioner has not overcome the strong presumption of verity attached to his solemn, signed declarations in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as the findings made by the trial judge accepting the

---

[3]The italicized words in this statement were hand-written into the document.

plea, constitute a formidable barrier to any subsequent collateral proceedings"); *see also Bonvillain v. Blackburn*, 780 F. 2d 1248, 1250 (5th Cir 1986.) (plea documents executed by petitioner are prima facie proof of the matters recited therein and conclusory allegations are not sufficient to overcome the strong presumption of verity that attaches to them).

Petitioner's claim is further rebutted by the state habeas record. During the state habeas proceeding petitioner submitted a letter sent to him by attorney Steven Denny in which Mr. Denny offered to represent petitioner in a state habeas proceeding. [Dkt. 13-9 at 67-68]. Petitioner specifically references a portion of the letter which reads,

> You told me that you did not want to plead and that you discussed this with Max Peck. You told me that he said you had 30 days to file a motion for new trial and that he would help you with it if you changed your mind and this is what enticed you to take the deal. A motion for new trial would likely have been denied as well, but you have no way to know that since you were relying on the advice of counsel. I would have found your story hard to believe in that lawyers should not make such representations to entice someone to plead, but Max Peck relayed the same information to me when I spoke with him about your case.

[Dkt. 13-9 at 67]. Trial counsel, Mr. Peck, submitted two affidavits in the state habeas proceeding in response to petitioner's claim and to the letter from Mr. Denny. In the first affidavit, Mr Peck stated he was being accused of either lying to petitioner or misinforming petitioner that he could withdraw his guilty plea and stated neither of these accusations was true. [Dkt. 13-9 at 76-77]. Counsel Mr. Peck continued,

> The defense team worked long and hard to secure an offer of life without the possibility of parole on behalf of Mr. Banks in the instant case. Aside from the very beginning of the case, the possibility of a successful resolution was never seriously discussed with Mr. Banks, because of the unrealistic expectations expressed by Mr. Banks at the outset. Our records reflect that in the very early stages of the case, Mr. Banks indicated he would accept a number of years that was too unrealistically low for us to ever have a chance to actually get the case resolved. Moreover, from that point forward, actually obtaining an offer from the district attorney appeared to be the greater impediment; it did not appear the district attorney had any desire at all to resolve the case. Understandably so, because the facts of the case were so bad, and the

> evidence of guilt was so strong. Our focus was getting an offer from the district attorney.
>
> ...
>
> Mr. Banks told me on October 14, 2011 that he would take the plea. Never at any time did I tell him he could withdraw his guilty plea. I would never have done that because it was simply not true, and would have undermined my efforts to have Mr. Banks "locked in" going into a plea, because it would only increase the likelihood a plea agreement would fall apart in the courtroom.
>
> ...
>
> Following the plea agreement, I met with Mr. Banks, and he explained he did not like the way "things went down" and asked if there was any way he could take back his plea. He was very upset. I explained the appellate process, and told him that should he so desire, although I did not think there was any basis, that nevertheless we would file a Motion for New Trial and Notice of Appeal on his behalf. I explained what each document was, and the thirty-day deadline for filing these documents.
> When I explained the Motion for New Trial, I explained that there was not likely any basis upon which the Court would grant this motion, but that we would try, if he wanted us to. I also explained that filing a Motion for New Trial was usually the first step before filing a Notice of Appeal, and that if we filed a Motion for New Trial, it extended the deadline to file a Notice of Appeal to 90 days, rather than thirty, but that in order to get that extended time, the Motion for New Trial had to be filed within 30 days of pronouncement of sentence in open court. It told him it was very unlikely that the Court would grant a Motion for New Trial, and that his appeal would likely also not go anywhere, because he had explicitly waived his right to appeal.
>
> At no time did I ever inform Mr. Banks he could withdraw his guilty plea.

[Id. at 77-79]. According to Mr. Peck's affidavit, he did not, prior to the plea, advise petitioner he could or had a right to withdraw his plea. Therefore, at the time of the plea, no promises and/or representations had been made which would have rendered the plea involuntary. As Mr. Peck's affidavit further reflects, *after* petitioner entered his guilty plea Mr. Peck discussed the deadlines for filing a motion for new trial and ultimately a direct appeal but admonished petitioner that in his opinion neither a motion for new trial nor a direct appeal would be successful. In his second affidavit Mr. Peck stated,

> Mr. Denny is either mistaken, or hopelessly confused. I spoke with Mr. Denny about the Banks case on at least two and possibly three separate occasions. When we initially

> spoke on the telephone, Mr. Denny asked me only whether I told Banks I "would file a motion for new trial for him." I responded truthfully that I had, but that I had also told Mr. Banks that I did not believe a motion for new trial would be granted. I went on to explain to Mr. Denny that because Mr. Banks filed a *pro se* notice of appeal accusing our office of misconduct, that we believed that Romon decided to forego the filing of a motion for new trial, and simply file a notice of appeal instead.
>
> During this conversation with Mr. Denny, I do not believe the timing of my conversation with Mr. Banks about the motion for new trial and notice of appeal ever came up. This was not an extensive conversation, or a detailed investigative appeal interview. Rather, it was a simple perfunctory question about whether I told Mr. Banks I would file a motion for new trial for him. Mr. Denny did not take the time at that point to learn the complete sequence of events. What Mr. Denny did not know, or bother to take the time to find out, was that this conversation occurred after the plea. Therefore I believe it is possible Mr. Denny misunderstood, and mistakenly believed I told Mr. Banks prior to the plea agreement that I would file a motion for new trial.
>
> This could not be further from the truth. Prior to the plea, the only discussion about a motion for new trial and notice of appeal between me and Mr. Banks occurred in conjunction with signing the plea documents, wherein I explained to Mr. Banks that he was waiving his right to appeal in exchange for the plea agreement, and that the Certificate of Appeal would reflect that.
>
> In subsequent conversations with Mr. Denny, I do know the timing of this conversation about a motion for new trial was explained in detail, as was the entire sequence of events. Mr. Denny's February 23, 2012 letter was ill-timed, mistaken and uninformed.

[Dkt. 13-9 at 96-98]. The trial court reviewed the affidavits provided by Mr. Peck and made findings of fact which included the finding that Mr. Peck's affidavits were credible [*Id.* at 145], that Mr. Peck and other defense counsels' efforts at securing Applicant's firm consent to the plea bargain through proper, correct legal advice was prudent and reasonable [*Id.*], and that Mr. Peck did not tell petitioner *before* the entry of his guilty plea that he could withdraw the plea [*Id.*]. Further, the affidavits reflect that while trial counsel discussed, after petitioner pled guilty, the option of and deadline for filing a motion for new trial and/or a notice of appeal, petitioner filed a *pro se* notice of appeal accusing trial counsel of misconduct, leading trial counsel to believe petitioner decided to forego the filing of a motion for new trial.

To the extent there is a factual dispute between petitioner and Mr. Peck, or between Mr.

Denny and Mr. Peck, that dispute was resolved by the state habeas court. Although petitioner may disagree with the state court resolution of that dispute, petitioner has not demonstrated the Texas Court of Criminal Appeals' denial of this claim was objectively unreasonable. Petitioner's argument he received ineffective assistance of trial counsel with respect to his first claim must be denied.

## VI.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for Writ of Habeas Corpus by a Person in State Custody filed by petitioner WILBERT RAMON BANKS be DENIED.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____ day of September 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28

U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).